# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| BRANDON MCNEAL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:17-CV-321-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Brandon McNeal on December 4, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 15], filed by Plaintiff on January 31, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for benefits or further proceedings. On March 6, 2018, the Commissioner filed a response, and on April 5, 2018, Plaintiff filed a reply.

## I. Procedural Background

On November 8, 2013, Plaintiff filed an application for benefits alleging that he became disabled on January 20, 2012. Plaintiff's application was denied initially and upon reconsideration. On March 16, 2016, Administrative Law Judge ("ALJ") Howard Kauffman held a video hearing at which Plaintiff and a vocational expert testified. Plaintiff was unrepresented and waived his right to counsel. On March 30, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 20, 2012, through June 30, 2015, his date last insured.

3.  Through the date last insured, the claimant had the following severe impairments: degenerative joint disease of the bilateral knees, status post bilateral total knee replacements, degenerative disc disease of the lumbar spine, and obesity.

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5.  Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can only occasionally climb ramps and stairs and occasionally balance, stoop, and kneel. He can never crouch or crawl and never climb ladders, ropes, or scaffolds.

6.  Through the date last insured, the claimant was unable to perform any past relevant work.

7.  The claimant was 44 years old, defined as a younger individual age 18-44, on the date last insured. The claimant subsequently changed age category to a younger individual age 45-49.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, from January 20, 2012, the alleged onset date, through June 30, 2015, the date last insured.

The Appeals Council denied Plaintiff's request for review and denied his request to reopen the decision, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial

evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III.     Analysis

Plaintiff argues that the ALJ failed to properly support his step three finding that Plaintiff did not meet Listing 1.02 or 1.03 and that the ALJ erred in his analysis of Plaintiff's RFC. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

Appendix 1 of the disability regulations contains a "Listing of Impairments" that the SSA has predetermined are disabling regardless of a claimant's age, education, or work experience. 20 C.F.R. § 404.1525(a). The Listings first enumerate criteria necessary to establish that a claimant's diagnosis is based on acceptable medical evidence. 20 C.F.R. § 404.1525(c)(2). The remaining criteria establish the severity the impairment much reach to be considered disabling. 20 C.F.R. § 404.1525(c)(2). A claimant meets Listing 1.02 for major dysfunction of a joint if he has a "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." To meet the severity of the listing for a hip, knee, or ankle dysfunction, a claimant must also show "an inability to ambulate effectively." Effective ambulation requires an ability to "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living . . . [E]xamples of ineffective ambulation include . . . the inability to walk a block at a reasonable pace on rough or uneven surfaces . . . [and] the inability to carry out routine ambulatory activities, such as shopping." Listing 1.00(B)(2)(b); Listing 1.02. A claimant meets Listing 1.03 if he has had "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively . . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." Listing 1.03. In general, the claimant bears the

5

burden of proving that his condition meets all the criteria of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). However, an ALJ's listing determination "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668 (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott*, 297 F.3d at 595-96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

Plaintiff argues that the ALJ failed to sufficiently develop the record regarding whether Plaintiff could "ambulate effectively," which is required to meet both listings. Specifically, Plaintiff cites to examples in the definition of that term, which applies to both Listing 1.02 and 1.03: "[e]xamples of ineffective ambulation include, but are not limited to . . . the inability to walk a block at a reasonable pace on rough or uneven surfaces . . . the inability to carry out routine ambulatory activities, such as shopping and banking." Listing 1.00(B)(2)(b). The list of examples is not exclusive, *see id.*, but Plaintiff argues that the ALJ should have inquired about those specific activities. The Commissioner argues that those questions were unnecessary, because "the ALJ's decision establishes that the evidence does not show an 'extreme limitation' of the ability to walk. Rather, . . . Plaintiff did not use an assistive device, and he walked and negotiated stairs without an observed limp or deviations."

In this case, the ALJ pointed to evidence in the record suggesting that Plaintiff can perform the tasks contemplated in the definition of the Listing. The ALJ cited Plaintiff's physical/occupational therapy records, which established that Plaintiff recovered from his surgeries to the point that he was able to drive, walk short distances, and navigate stairs. Although Plaintiff stated in a Function Report that he sometimes feels unsteady while walking, he later testified that he is able to walk around the block and play with his dog, and his reports

from physical therapy confirm that as of November 2014, he was able to walk 1000 feet and navigate stairs. Those capabilities would be sufficient for Plaintiff to complete "routine ambulatory activities" such as shopping and banking. Although the ALJ's decision did not explicitly analyze each of the examples contemplated by the Listing, remand is not appropriate on that basis given the evidence in the record that Plaintiff is able to ambulate effectively. An error is harmless, and remand for that error is not appropriate, when the ALJ would reach the same result on remand. *McKinsey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Plaintiff also argues that the ALJ failed to adequately develop the factual record and failed to properly evaluate the medical evidence at step four of his analysis. The Commissioner maintains that the ALJ properly developed and evaluated the record.

When a claimant is unassisted by counsel, the ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of and explore for all of the relevant facts." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997); *see also Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The ALJ restricted Plaintiff to sedentary work as defined in 20 C.F.R. § 404.1567(a), which generally requires the employee to be seated for approximately six hours of an eight-hour workday, and stand and walk for up to two hours of the workday. *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996) at *5 ("Sitting would generally total about 6 hours of an 8-hour workday."); SSR 83-10, 1983 WL 31251 at *5 (January 1, 1983) ("Jobs are sedentary if walking and standing are required occasionally . . . 'occasionally' means occurring from very little to up to one-third of the time."). However, the record suggests that Plaintiff needed to lie down during the day to relieve pain and fatigue, and that he could not drive for long periods because it hurt his

7

knees. Both limitations could hinder Plaintiff's ability to sit for six hours and stand and walk for up to two hours in an eight-hour workday. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (March 28, 2016) (requiring ALJ to consider "location, duration, frequency, and intensity" of pain, and "any measures . . . the individual uses or has used to relieve pain or other symptoms"). The ALJ declined to address this evidence, and failed to develop the record in a way that would have explained what effects those limitations would have on Plaintiff's suitability for sedentary work. *See Zurawski v. Halter*, 245 F.3d 881, 888 (remanding where ALJ failed to address "all avenues" relating to claimant's complaints of pain).

Plaintiff also argues that the ALJ erred in the weight he assigned to the treating physician, Dr. Judson Wood. Dr. Wood opined that Plaintiff was disabled and would need back surgery in the future. The ALJ discounted Dr. Wood's opinion in part because he "does not specify what type of back surgery is needed, and [the ALJ] would expect a better discussion in Dr. Wood's records than just probable surgery." Particularly when the claimant is unrepresented, it is the ALJ's job to solicit that information, rather than jumping to a negative inference about the medical professional's credibility. *See Mallett v. Barnhart*, 81 F. App'x 580, 582 (7th Cir. 2003) (for an unrepresented claimant, "an ALJ has a duty to . . . uncover[ ] all the relevant evidence.") (quoting *Binion*, 13 F.3d at 245).

The ALJ must evaluate every opinion he receives from a medical source. 20 C.F.R. § 404.1527(a)(1),(b). In general, he should "explain" the weight given to these opinions "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*, § 404.1527(f)(2). Although medical evidence

8

"may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618.

Moreover, "a judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2)); *Gerster v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). When the treating physician opines that the claimant is disabled, that opinion cannot be ignored without a sound explanation. *See, e.g,. Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *see also Roddy*, 705 F.3d at 636 ("Even though the

ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

In this case, the ALJ afforded no more than "little weight" to any of the medical evidence, which leaves the Court concerned that the ALJ substituted his own medical determination for that of the medical professionals whose opinions appear in the record, in violation of the Seventh Circuit Court of Appeals' repeated warning that ALJs are not to make their own independent medical findings and should not "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Instead, the ALJ appeared to credit some portions of the medical opinions that were granted "little weight" and ignored others, without explaining why. For example, the ALJ discounted Dr. Wood's conclusions regarding "the claimant's young age and his degenerative changes" as evidence of disability, but positively cited aspects of Dr. Wood's records "showing relatively good findings . . . including . . . bilateral knee x-rays showing knee replacement in good alignment." The Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence in the record to find improvement. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion.

This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Although the ALJ did state that Dr. Wood was Plaintiff's treating surgeon, the ALJ did not explain how the extent of the treating relationship and the doctor's specialty affected the weight given to his opinion. *See* 20 C.F.R. §§ 404.1527(c); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (remanding where ALJ "said nothing about this required checklist of factors" in denying controlling weight to treating physician). The ALJ failed to consider the opinion of Dr. R. Jao, a consultative examiner, despite the requirement to consider all medical opinions. *See* 20 C.F.R. § 404.1527(a)(1),(b). The ALJ apparently credited the testimony of the state's non-examining medical consultant, to find that Plaintiff could stoop, but Dr. Jao opined that Plaintiff could not stoop. By crediting an opinion to which he gave "little weight" and ignoring a contradictory opinion without explanation, the ALJ failed to provide a "'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618.

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to his conclusions about Plaintiff's RFC. He is reminded of the need to fully review all of the medical evidence in the record and to obtain additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§

404.1512(d)(1), 416.919(b)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)) (other citations omitted).

V.  **Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 13], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 27th day of August, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record